IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES L. LEVENTRY and DEBORAH A. LEVENTRY, et al., | ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) Civil Action No. 06-193 ) |
| MATT WATTS, et al., | ) ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiffs seek to impose liability for various constitutional transgressions under 42 U.S.C. § 1983 against the district attorney whom they allege had involvement in certain aspects of the Husband-Plaintiff's criminal case. The Defendant district attorney has filed a Motion to Dismiss based upon theories of absolute immunity and / or qualified immunity. After careful review, I find that the Defendant is absolutely immune from suit with respect to those actions taken in his quasi-judicial capacity and is entitled to qualified immunity with respect to those actions taken in his investigatory capacity. Accordingly, the Motion to Dismiss is granted.

### OPINION

1

Defendant David Tulowitzki ("Tulowitzki") has filed a Motion to Dismiss Pursuant to Rule 12(b)(6) Or In The Alternative Rule 56 the claims asserted by Plaintiffs James L. Leventry and Deborah A. Leventry ("the Leventrys") in their First Amended Complaint. See Docket No. [54].[1] The Leventrys purport to assert claims under 42 U.S.C. § 1983 for violations of their rights under the 1st, 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution. They also reference the right to "bail" and "due process of law" and "conspiracy." These references are all made in the caption of the First Amended Complaint.

The claims arise from the stop of James Leventry's vehicle on September 3, 2004 and his subsequent arrest and the ultimate confiscation of his bail money. For purposes of the pending Motion, the Leventrys contend that Tulowitzki, the Cambria County District Attorney, counseled his subordinate Don Gerred and the West Hills Regional Police officers regarding the seizure of bail money; that he repeatedly sought to delay James Leventry's criminal case; that he declined to adequately cooperate with discovery and that he ordered his office to appeal a suppression order to the Pennsylvania Superior Court.

Tulowitzki urges that the Leventrys' claims must be dismissed because he is entitled to absolute immunity because the actions serving as the basis of the § 1983 claim asserted against him were taken in his quasi-judicial role as a prosecutor. In the alternative, he contends that he is entitled to qualified immunity. The Leventrys

---

[1] The Leventrys filed a Second Amended Complaint at Docket No. [43], but that does not contain any substantive allegations. Accordingly, I will refer to the First Amended Complaint when assessing the Leventrys' allegations.

2

have responded by filing a Motion to Dismiss Defendant's Motion to Dismiss Pursuant to Rule 12(B)(6). See Docket No. [63]. In that document, the Leventrys respond to the absolute immunity and qualified immunity doctrines. Accordingly, the Motion is ripe for disposition and does not require conversion to one for summary judgment.

## STANDARD OF REVIEW

In deciding a Motion to Dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1988). I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." Colburn, 838 F.2d at 666.

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977). Moreover, the plaintiff must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(2)(a) and Conley, 355 U.S. at 45-46. Matters outside the pleadings should not be considered. This includes "any written or oral evidence in support of or opposition to the

pleadings that provides some substantiation for and does not merely reiterate what is said in the pleadings." Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1366 (West 1990).

### ANALYSIS

I. Absolute Immunity

Tulowitzki contends that he is entitled to absolute immunity from suit. In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984 (1976), the Supreme Court did recognize that, "in light of the immunity historically accorded prosecutors at common law, state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role." Light v. Haws, 472 F.3d 74, 77 (3d Cir. 2007). Absolute immunity does not, however, extend to "'[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006), quoting, Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L.Ed.2d 209 (1993). A prosecutor acting in such a capacity may be protected by qualified immunity. Imbler, 424 U.S. at 430-31. Tulowitzki, as the movant, has the burden of establishing that he was acting as an advocate and in a quasi-judicial role, in order to be given absolute immunity. Buckley, 509 U.S. at 273.

"In determining whether absolute immunity is available for particular actions, the courts engage in a 'functional' analysis of each alleged activity." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992), citing, Harlow v. Fitzgerald, 457 U.S. 800,

4

811, 102 S. Ct. 2727, 2734, 73 L.Ed.2d 396 (1982) and <u>Rose v. Bartle</u>, 871 F.2d 331, 343 (3d Cir. 1989). Thus, because the "decision to initiate a prosecution is at the core of a prosecutor's judicial role, "courts have found a prosecutor entitled to absolute immunity when making this decision, even where the prosecutor acted in the absence of good faith. <u>Id</u>. (citations omitted). Additionally, the Third Circuit court has amplified that "participation in court proceedings intimately associated with the judicial phases of litigation" are protected by absolute immunity. <u>See</u> <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 356 (3d Cir. 1999). Consequently, the "'deliberate withholding of exculpatory information; is included within the 'legitimate exercise of prosecutorial discretion.'" <u>Yarris</u>, 465 F.3d at 137, <u>quoting</u>, <u>Imbler</u>, 424 U.S. at 431-32 n. 34. Further, a prosecutor who fabricated a confession would be entitled to absolute immunity if he did so during the course of prosecuting the case. <u>See</u> <u>Kulwicki</u>, 969 F.2d at 1467.

Thus, while the line between quasi-judicial and investigative activity is "far from clear," many courts look to the activity in relation to the filing of the complaint. <u>Id</u>. "Evidence gleaned prior to the filing is deemed investigative. Certain pre-filing interactions with the police are 'investigative,' such as directing evidence-gathering ... or giving probable cause advice." <u>Id</u>. (citations omitted).

Viewing the Leventrys' allegations in light of these guidelines, I find that certain of Tulowitzki's actions are protected by the doctrine of absolute immunity. Specifically, the Leventrys complain that he failed to cooperate with discovery; that he repeatedly sought to continue James Leventrys' criminal case; and that he

5

ordered his office to appeal a suppression ruling to the Pennsylvania Superior Court. These actions all occurred after the filing of a "complaint," and in Tulowitzki's capacity as an advocate. He was acting in a quasi-judicial role and is thus entitled to absolute immunity from suit under § 1983 for any constitutional transgressions associated with these actions.

I reach a different conclusion, however, with respect to the only other allegation asserted against Tulowitzki - that involving his counseling of the police with respect to the search and seizure of the bail money. That action apparently occurred while Tulowitzki was acting in an investigatory capacity, rather than in a quasi-judicial capacity. As such, I find that, as the facts are alleged at this juncture, he is not entitled to absolute immunity.

II. Qualified Immunity

Though absolute immunity is foreclosed, qualified immunity may still be available to a prosecutor who acts in an investigative or administrative capacity. As with police officers, "[u]nder qualified immunity, a prosecutor is 'shielded from liability' if [his or] her conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Frankel v. The Disciplinary Board of the Supreme Court of Pennsylvania, Civ. No. 5-1450, 2006 WL 1118050 at * 4 (E.D. Pa. April 27, 2006), citing, Schrob v. Catterson, 948 F.2d 1402 (3d Cir. 1991) (footnote omitted). First, I must determine whether the Leventrys' allegations demonstrate that Tulowitzki's conduct violated a constitutional right. See Walter v. Pike County, Pennsylvania, 465 F. Supp.2d 409, 427 (E.D. Pa. 2006), citing, Saucier v.

Katz, 533 U.S. 194, 201 (2001).  If a violation exists, I must then determine whether that right was clearly established at the time of the injury. Walter, 465 F. Supp.2d at 427 (citations omitted).  This inquiry cannot be done in the abstract and based upon broad propositions of law.  Rather, "the qualified immunity inquiry 'must be undertaken in light of the specific context of the case... .'" Thomas v. Independence Twp., 463 F.3d 285, 300 (3d Cir. 2006), quoting, Saucier, 533 U.S. at 201.

The Leventrys do not clearly articulate which constitutional right was infringed in conjunction with Tulowitzki's actions regarding the bail money. The First Amended Complaint does reference his remaining "aloof from the bail money seizure problem." See First Amended Complaint, ¶ 31.  Additionally, in responding to Tulowitzki's Motion, the Leventrys reference the Fourth Amendment when discussing immunity and the bail money. See Docket No. [63].  Given these allegations, I will presume that the Leventrys are asserting a Fourth Amendment violation in this instance.

The question remains, however, whether the facts as alleged in the First Amended Complaint, demonstrate a violation of the Fourth Amendment. According to the Leventrys, James Leventry was detained following a traffic stop on September 3, 2004.  He was charged with possession with intent to deliver marijuana; possession with intent to deliver OxyContin; and possession with intent to deliver methadone. See First Amended Complaint, ¶ 16. Judge Pavlovich set bond at $100,000 or $10,000 cash. Id. Deborah Leventry then began amassing $10,000 cash and relinquished that money to Judge Pavlovich.  A drug dog alerted then to the

presence of drugs on the money. The search by the drug dog occurred within approximately one hour of Deborah Leventry's arrival with the money at the District Justice Office.[2]

Given these facts, I find that there is no Fourth Amendment violation. First, Deborah Leventry voluntarily relinquished possession of the bail money. Thus, I do not believe she had any legitimate privacy interest in it. Further, "[a]n investigatory technique employed by police officers that does not infringe upon a person's reasonable expectation of privacy is not a search under the Fourth Amendment." United States of America v. Mason, Civ. No. 4-720, 2005 WL 1168369 at * 4 (E.D. Pa. May 16, 2005), citing, United States v. Jacobsen, 466 U.S. 109, 113 (1984). "The use of drug-sniffing dogs in areas that are otherwise in the public area 'generally does not implicate legitimate privacy interest.'" Mason, 2005 WL 1168369 at * 4, quoting, Illinois v. Caballes, 125 S. Ct. 834, 838 (2005). "Therefore, police use of a drug-sniffing dog is not a search, unless the dog and / or the police have in some other way, such as by entering a home, violated an individual's 'legitimate privacy interest.'" Id. Accordingly, Tulowitzki's counseling of the police to use a drug dog to sniff the money did not constitute a search in any event. Once the dog alerted to the

---

[2] The Leventrys claim there is a discrepancy concerning when the drug dog search was conducted. The West Hills police officers contend that the search occurred at 19:55 hours on September 4, 2004. Sergeant Kiefer, handler of the drug dog, filed a report dated September 5, 2005 which recounts that he was contacted about the need for a drug dog search at approximately 19:30 hours. He does not include the date in the report itself. Apparently, the Leventrys look to the date of the report, September 5, 2004, as evidence that Kiefer believes the search occurred on that date. Upon closer inspection, however, Kiefer's report is shown as having been written at 19:00 on September 5, 2004. Accordingly, it is illogical to infer that he was writing about events that would not transpire until 19:30. Rather, I read the reports in a consistent manner, with Kiefer filling out a report on September 5, 2004, recounting events of the previous day.

presence of drugs on the money, the money was appropriately seized. Given the lack of a constitutional violation, Tulowitzki is entitled to qualified immunity.

In the alternative, even if a constitutional violation does exist, I find that the right at issue was not clearly established at the time. As stated above, this assessment must be made in light of the specific context of the case. Here, we have, according to the facts set forth in the First Amended Complaint, an individual who is arrested on charges of possession with intent to deliver three different types of drugs. Also according to the First Amended Complaint, the police know the individual to be a long time drug user. His wife is then able to raise a substantial amount of money in a short period of time on a weekend day. It was objectively reasonable, under these circumstances, for a prosecutor to counsel police officers to perform a drug dog search of the bail money. Further, once the dog had alerted to the presence of drugs on the money, it was objectively reasonable for a prosecutor to order the police officers to confiscate that money. Because it would not have been clear to a reasonable prosecutor that his conduct was unlawful in the situation which Tulowitzki confronted, I find that he is entitled to qualified immunity.

*********************

ORDER OF COURT

AND NOW, this **17th** day of May, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Motion to

Dismiss (Docket No. [54]) is GRANTED because the Defendant is entitled to absolute immunity and/or qualified immunity with respect to all of the allegations which serve as the factual predicates for the claims asserted under 42 U.S.C. § 1983 against him.

It is also ORDERED that the Plaintiffs' Motion to Dismiss Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket No. [63]) is DENIED.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge